IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CARRIE L. HEAPE, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 06-42-E-LMB |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM DECISION |
| COMMISSIONER, SOCIAL SECURITY | ) | AND ORDER |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Currently pending before the Court is Carrie L. Heape's Petition for Review seeking review of the final decision of Respondent denying her applications for disability insurance under Title II of the Social Security Act, and Supplemental Security Income disability benefits under Title XVI of the Social Security Act. The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

## ADMINISTRATIVE PROCEEDINGS

Carrie L. Heape ("Petitioner" or "Claimant") applied for disability insurance benefits and for supplemental security income benefits on January 6, 2003. (AR 19, 378). Petitioner alleged disability beginning September 15, 2001 as a result of a herniated disc, depression, and anxiety attacks. (AR 20, 378). Petitioner's applications were denied initially and again after reconsideration. Petitioner filed a timely request for a hearing before an Administrative Law

MEMORANDUM DECISION AND ORDER - 1

Judge ("ALJ").  ALJ G. Alejandro Martinez held a hearing on August 16, 2004 at which time Petitioner appeared and testified. Jon F. Burke, Ph.D, a medical (psychological) expert, James J. Grissom, M.A., C.R.C., a vocational expert, and Karen Hapke, LCSW, Petitioner's therapist, also testified at the hearing.  Jacob Bernhardt, a non-attorney, represented Petitioner at the hearing.

On January 19, 2005, the ALJ issued a decision denying Petitioner's claim because he found Petitioner has the capacity to perform past relevant work as a sterilizer or equipment cleaner and is therefore not under a disability as defined in the Social Security Act at any time through the date of his decision.  (AR 28).

Petitioner requested the Appeals Council review the ALJ's decision.  The Appeals Council denied Petitioner's request on December 2, 2005 making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed this instant action. Petitioner argues that the ALJ erred by failing to provide specific legitimate reasons for rejecting the opinion of her examining and treating physicians and the ALJ failed to provide clear and convincing evidence for rejecting her testimony. *Petitioner's Brief in Support of Petition for Review* (Docket No. 12).

Petitioner requests that the ALJ's decision be reversed or, in the alternative, this matter be remanded in order to allow the ALJ an opportunity to further evaluate the evidence.

MEMORANDUM DECISION AND ORDER - 2

## II.

## BACKGROUND

At the time of the hearing before the ALJ, Petitioner was thirty years of age with a special education high school diploma and one year of college.  Her past work experience includes employment as a shipping and receiving clerk, a parts runner, a sterile processing and distribution worker, an activities assistant, and a group home support trainer.  (AR 20).

## III.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20 C.F.R. §§ 404.1520, 416.920 (2005).  The second part of that process involves a determination regarding whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a) (2006).  If no "severe" impairment is found, the claimant will be found not to be disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be

MEMORANDUM DECISION AND ORDER - 3

upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.

MEMORANDUM DECISION AND ORDER - 4

*See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id.* at 1095 (citation omitted).

The issue presented in the instant appeal is whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and whether it is based on application of proper legal standards.

## IV.

## DISCUSSION

### A.     Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity since the alleged onset of disability. (AR 21, 27).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is in the negative, disability benefits are denied. 20 C.F.R. § 404.1520(c). The ALJ found that

MEMORANDUM DECISION AND ORDER - 5

Petitioner has the following medically determinable, severe impairments: a depressive affective disorder, a generalized anxiety disorder and low back pain.  (AR 22).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).  In this respect, the ALJ concluded that Petitioner's severe impairments do not meet or equal any listing of impairments under Appendix 1, Regulations No. 4 and 16.  (AR 23).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  In this respect, the impartial vocational expert testified that based upon Petitioner's residual functional capacity, she could perform her past relevant work as a sterilizer or equipment cleaner, a light semi-skilled job as generally performed in the national economy because none of these jobs required a greater mental or physical capacity than that exhibited by Petitioner at the present.  The ALJ found the vocational expert's testimony is reliable because it conforms to the classifications established by the Department of Labor in its Dictionary of Occupational Titles and is consistent with the evidence of record.  (AR 27, 28).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Because the ALJ found that

Petitioner can perform her past relevant work as a sterilizer or equipment cleaner, the ALJ did not address this fifth step.

      **B.**      **Testimony of Petitioner's Treating and Examining Physicians**

Petitioner argues that the ALJ erred by failing to provide specific reasons for the weight assigned to the opinions of her examining and treating physicians. *Petitioner's Brief in Support of Petition for Review*, p. 7 (Docket No. 12).

      **1.**      **Examining Psychologist**

Petitioner first objects to the ALJ's treatment of an evaluation performed by an examining clinical psychologist, Dr. Mark Corgiat. *Petitioner's Brief*, p. 8 (Docket No. 12) (citing AR 173-78). The opinion of an examining physician is entitled to considerable weight. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If the examining physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for rejecting the opinion. *Id.* If the examining physician's opinion is contradicted, then the opinion can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830-31. The opinion of a nonexamining physician alone cannot constitute substantial evidence sufficient to justify the rejection of an examining physician's opinion. *Id.* at 831.

Dr. Corgiat reported that Petitioner "has consistently received treatment and has struggled with very severe affective disorder," and opined that Petitioner's "current ability to perform work-related mental activities is compromised," although he also noted she was working on a part time basis. (AR 178). Dr. Corgiat diagnosed Petitioner with a recurrent, moderate major depressive disorder, a dysthymic disorder with early onset, a panic disorder with agoraphobia, and a dependant and avoidant personality disorder. (AR 23, 177).

MEMORANDUM DECISION AND ORDER - 7

The ALJ noted Dr. Corgiat's diagnoses, but did not mention Dr. Corgiat's assessment of Petitioner's ability to perform work-related mental activities.  Instead, the ALJ focused on other examination findings and determined that, in view of Dr. Corgiat's "rather benign objective findings during testing . . . Dr. Corgiat may have been overly swayed by claimant's tearfulness, as she does not appear to be so dysfunctional as to be unable to perform some work."  (AR 28). The ALJ went on to state that "[t]he objective testing was all within normal limits except for her occasional tearfulness."  (AR 23).

Although Dr. Corgiat found much of Petitioner's mental capacity to be within a normal range (*see, e.g.*, AR 176) (reporting that Petitioner's attention/concentration and short term and remote memory is normal), Dr. Corgiat also noted that "there does not appear to be any tendency to exaggerate or minimize her symptoms" and found that Petitioner's "response latencies appear to be a little longer than normal" and her "[g]eneral fund of information" is well below normal limits (AR 175, 176).[1]

Given these findings, the ALJ's statement that "[t]he objective testing was *all* within normal limits" is not completely accurate.  (AR 23) (emphasis added).  More particularly, the ALJ supported this general statement with a finding that Petitioner's "general fund of

---

[1]  Dr. Corgiat also provided a global assessment ("GAF") of functioning of 45.  Although not an objective assessment, a GAF can provide useful information.  *See, e.g., Wesley v. Comm'r of Soc. Sec.,* No. 99-1226, 2000 WL 191664, at *3 (6th Cir. Feb. 11, 2000) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (explaining that the GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning"); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (noting that while a GAF score may be of "considerable help," it is not "essential" to determining an individual's residual functional capacity).  "Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient."  *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).  A GAF between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  *Id.*

MEMORANDUM DECISION AND ORDER - 8

knowledge" was within normal limits (AR 23), while Dr. Corgiat's report actually states that Petitioner's "general fund of information" is well below normal limits (AR 176). This alone might amount to harmless error if the ALJ's other reason for rejecting Dr. Corgiat's opinion amounted to a specific and legitimate reason supported by substantial evidence.

In rejecting Dr. Corgiat's opinion, the ALJ also found that the "medical record does not reflect sustained, regular psychiatric treatment for [Petitioner's] condition," noting that "[t]here are *no* entries prior to 2002." (AR 24) (emphasis added). Although Petitioner was not treated by a psychiatrist prior to the year 2002, there are records of Petitioner's mental health treatment prior to 2002. Petitioner was treated from March to April of 2000 by both Dr. Field, a general practitioner, and a social worker with the Department of Health and Welfare.

On March 14, 2000, Petitioner visited Dr. Field and complained of anxiety and depression and Dr. Field noted that Petitioner's condition had worsened but that she was currently in psychotherapy. (AR 140). He suggested that she take a "medical leave of [absence] until crisis gets under control" and prescribed medication. (AR 141). On March 20, 2000, Dr. Field noted that Petitioner "[t]ried to OD," but was not admitted. She was in counseling and no longer suicidal but her condition (depression and anxiety) "has worsened." (AR 139). On April 4, 2000, Petitioner saw Dr. Field for a follow-up visit. (AR 138).

Petitioner also was treated for her mental condition in March and April of 2000 by Larry Calabro, MSW, through the Department of Health and Welfare, but her case was closed after she missed several appointments. (AR 255-62). At that time, a physician reviewed Petitioner's record and assessed that Petitioner needed psychiatric and psychosocial services. (AR 261). Although Petitioner's treatment was not extensive, she was treated prior to 2002 and the ALJ's

MEMORANDUM DECISION AND ORDER - 9

statement that "[t]here are no entries prior to 2002" of treatment for her condition is not entirely accurate. [2]

Because the ALJ's discussion of Dr. Corgiat's evaluation and of Petitioner's mental health record contains some inaccuracies upon which the ALJ appeared to rely in rejecting Dr. Corgiat's opinion, this case will be remanded for further consideration by the ALJ.

### 2.      Treating Source Opinions

Petitioner argues that the ALJ did not afford appropriate weight to the opinions of Dr. Paz, a treating physician, and those of Karon Hapke, a social worker who treated Petitioner, and Kathleen Leap, a clinical nurse specialist and nurse practitioner who also treated Petitioner.

A "treating source" is defined as a "physician, psychologist, or other acceptable medical source" who treats the claimant.  20 C.F.R. §§ 404.1502, 416.902; *see also* Social Security Ruling 06-03p, 71 Fed.Reg. 45,593, 45,594 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 §§ C.F.R. 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight.").  Similarly, "medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *see also* Social Security Ruling ("SSR") 06-03p, 71 Fed.Reg. at 45,594 ("[O]nly 'acceptable medical sources' can give us medical

---

[2]     The ALJ also found that most of Petitioner's medical treatment in 2002 was for occasional colds and other common ailments.  During this time, Petitioner obtained mental health treatment at the Idaho State University Health Service (AR 143-44) (Dec. 30, 2002 visit for depression/anxiety) (AR 149) (mental health follow-up visit) (AR 154-55) (July 10, 2002 mental health follow up visit for anxiety/depression) (AR 171-72) (Jan. 15, 2002 visit for depression/anxiety).  As part of this treatment, on July 22, 2002, Dr. Nancy Alston, MD, assessed Petitioner with "[d]epression and anxiety with severe panic disorder," and noted that Petitioner had "undergone repeated psychiatric therapies."  (AR 153).

MEMORANDUM DECISION AND ORDER - 10

opinions."). Thus, Ms. Hapke and Ms. Leap were not treating sources and their opinions were not entitled to the preference accorded a treating physician.

While their opinions were not entitled to treating-source weight, however, they were entitled to consideration. The Regulations state that "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Licensed clinical social workers and nurse practitioners are specifically listed as "other" medical sources who may present evidence of the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work. *Id.* §§ 404.1513(d)(1), 416.913(d)(1).

In other words, "[i]nformation from these 'other sources' cannot establish the existence of a medically determinable impairment," but the information from these sources "may be based on special knowledge of the individual and may provide insight in to the severity of the impairment[] and how it affects the individual's ability to function." SSR 06-03P, 2006 WL 2329939 at * 2 (Aug. 9, 2006). Opinions from these other sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-03P, 2006 WL 2329939 at * 3 (Aug. 9, 2006).

MEMORANDUM DECISION AND ORDER - 11

The ALJ noted the mental capacity assessments completed by Ms. Hapke, in conjunction with Dr. Paz,[3] and Kathleen Leap.[4]  Each assessed Petitioner with extreme and/or marked limitations of psychological ability, but the ALJ found that the "assessments simply do not relate to the objective medical evidence contained in the record."  (AR 24).  The ALJ noted that this "conclusion is supported by the opinion of the medical expert [Dr. Burke] who testified that the medical record does not support the conclusion that the claimant has a depressive or anxiety-related condition that is so significant as to prevent her from being functional in the work place."  (AR 24).  Dr. Burke, however, did not have access to all of Petitioner's medical records when he testified at the hearing.  (*See* AR 378).

Dr. Burke testified that the records he reviewed were not sufficient to know how severe Petitioner's mental impairments are.  (AR 389).[5]  Dr. Burke noted that it would help to have "more contemporary descriptions of [the] patient's behavior and contemporary circumstances, rather than" references to severe depression diagnosed at age 14.  Based on these statements, Petitioner's representative requested that the hearing be postponed until records of Petitioner's

---

[3]  Dr. Paz and Ms. Hapke both signed the same assessment.  (AR 562-64).  It appears that Ms. Hapke performed the assessment and Dr. Paz later reviewed and signed it, but the ALJ provided no discussion of this issue other than to describe the limitations in the assessment as being "found" by both Ms. Hapke and Dr. Paz.  (AR 130-32).

[4]  The ALJ listed Kathleen Leap as a source whose specialty was "unknown."  (AR 24).  The record, however, contains documents referring to her as a CNS/NPP.  (AR 269-70; 336; 338-39).  Under these circumstances, where the ALJ was not certain of Ms. Leap's credentials, it is not clear how the ALJ could assign her opinion the appropriate weight under the regulations.  This assessment of a treating provider's opinion, without knowing what type of provider she was, provides an additional reason for remanding this case for reconsideration.  If an ALJ is not certain what type of provider a treating source is, there is little basis to determine what weight that provider's opinion should be accorded.  *See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1039 (9th Cir. 2003) (noting that if an ALJ is not sure as to a treating source's background, he has the opportunity and duty to develop the record).

[5]  Dr. Burke also demonstrated some unfamiliarity with the records he had reviewed.  For example, he did not "see anything in the chart from Dr. Alston," although there was one record from her.  (AR 386-87).

MEMORANDUM DECISION AND ORDER - 12

on-going therapy could be submitted and reviewed.  (AR 389).  The ALJ did not postpone the hearing, but granted Petitioner additional time to provide the records.  (AR 390).

The missing records are those from the Idaho Department of Health and Welfare Community Mental Health Program, where Petitioner received treatment for her mental condition in 1996, 2000, and from September of 2003 to February of 2004.  (AR 242-83; 378). Also missing were records from the Portneuf Medical Center where Petitioner was treated for general medical problems as well as her depression.  (AR 284-358).

Considering that additional medical records existed and were submitted after the hearing, the ALJ's reliance on Dr. Burke, who specifically noted the insufficiency of the medical record available to him, does not amount to substantial evidence supporting the rejection of Dr. Paz's opinion as a treating physician.  *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (requiring substantial evidence to reject a treating physician's opinion).  Accordingly, this case will be remanded for further consideration by the ALJ.

### C.       Petitioner's Credibility

Petitioner argues that the ALJ failed to provide clear and convincing evidence for rejecting her testimony.  *Petitioner's Brief in Support of Petition for Review*, p. 11 (Docket No. 12).  The ALJ discussed Petitioner's description of her daily activities and determined that Petitioner's "own testimony suggests a greater degree of ability and functionality than she alleges."  (AR 24).  In assigning a residual functional capacity, the ALJ found that Petitioner's "functional allegations, and conclusion of total disability" was not "reasonably consistent with the objective medical evidence and non-medical evidence, when considered as a whole," and therefore discounted "those subjective complaints and their alleged functional effect in

MEMORANDUM DECISION AND ORDER - 13

determining such are not totally disabling."  (AR 26).  The ALJ noted that this "conclusion is supported by the findings of State Agency physicians who previously examined the record and reported their opinions."  (AR 26).

In light of the decision to remand this action for the ALJ's further consideration of the opinions and records of both the treating and examining providers, and because one of the reasons given by the ALJ for his adverse credibility determination was that Petitioner's complaints were not consistent with the medical and non-medical evidence, it is appropriate to remand this matter to allow the ALJ an opportunity to review and reconsider Petitioner's credibility.  On remand, if an adverse credibility finding is made, the ALJ must "state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

## V.

## CONCLUSION

Although there is evidence that would support the ALJ's determination,[6] statements of the record that are not entirely accurate undermine the ALJ's reasoning.  Treating and examining

---

[6]    For example, the ALJ may be able to support his finding that "[t]he medical record does not reflect sustained, regular psychiatric treatment for her condition," by substantial evidence in the record if he provides specific and legitimate reasons for doing so.  One factor that may impact this consideration is Petitioner's report to care providers that she was unable to go to her doctor at times "because of lapsed insurance," and she sought medication refills at an urgent care center as an alternative.  (AR 315).

Additionally, a treating physician's opinion may be disregarded if it is "brief and conclusory in form with little in the way of clinical findings to support [its] conclusion."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)).  If the opinions of Dr. Paz and other providers are not supported by clinical findings, that circumstance could provide a specific and legitimate reason for rejecting those opinions.  For instance, Dr. Burke noted that "there are no mention of any clinical behaviors to support [Dr. Alston's] observation[s]."  (AR 387).

MEMORANDUM DECISION AND ORDER - 14

opinions may be rejected only if the decision to do so is based on specific and legitimate reasons that are supported by substantial evidence in the record.

Although an ALJ will not be reversed for errors that are harmless, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005), here the ALJ made more than one statement in support of his determination that is not supported by substantial evidence in the record.  The effect of these concerns require remanding in order to allow the ALJ to reconsider the evidence, facts and information in the record and to then make a determination after considering all of the evidence in the record.

## VI.

## ORDER

Based on the foregoing, Petitioner's request for review is GRANTED.  The Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED:  **March 28, 2007**.



Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

MEMORANDUM DECISION AND ORDER - 15